UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Henry Davis )
8001 Boundry Drive )
Forestville, Maryland 20747 )
)
      Plaintiff, )
)
      v. )
)
Department of Youth )
Rehabilitation Services )
Youth Services Center )
1000 Mt. Olivet Road, N.E. )
Washington, D.C. 20002 )
)
Vincent Schiraldi, Director )     Civil Action No.: _____
10000 Mt. Olivet Road, N.E. )
Washington, D.C. 20002 )
)
David Brown, Deputy Director, )
8300 Riverton Court )
Laurel, Maryland 20724 )
)
Mark Schindler, Chief of Staff )
8300 Riverton Court )
Laurel, Maryland 20724 )
)
LaVern Evans, Superintendent )
8300 Riverton Court )
Laurel, Maryland 20724 )

)
D.J. Thomas, Deputy Superintendent )
of Operations )
8300 Riverton Court )
Laurel, Maryland 20724 )
)
Cathy Ohler, Human Resources Specialist)
Representative )
8300 Riverton Court )
Laurel, Maryland 20724 )

| | |
|---|---|
| Pili Robinson, Senior Consultant to the | ) |
| Department of Youth Rehabilitation | ) |
| The Missouri Youth Service Institute | ) |
| 1906 Hayselton, Drive | ) |
| Jefferson City, MO 65109 | ) |
|       Defendants. | ) |
| | ) |

## NOTICE OF REMOVAL

The Department of Youth Rehabilitation Services, Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, D.J. Thomas, and Cathy Ohler are defendants in the case *Henry Davis v. Department of Youth Rehabilitation Services, et al.,* Civil Action No. 06-8581, now pending in the Superior Court of the District of Columbia. Pursuant to 28 U.S.C. §§1441 and 1446, these defendants remove the above action from the Superior Court of the District of Columbia to this Honorable Court because the claims raised in plaintiff's complaint present federal questions appropriate for this Court.

Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1446, parties have 30 days after the receipt of the complaint, through service or otherwise, to file its removal of an action to the Untied States District Court. The herein named defendants received a copy of the Summons and Complaint on or about December 4, 2006. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received by undersigned counsel in this matter are attached hereto and incorporated by reference herein.

                                          Respectfully submitted,

                                          EUGENE A. ADAMS
                                          Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ _____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ _____
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 724-7854; (202) 727-6295
leah.taylor@dc.gov

### CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of December 2006, a copy of the foregoing

Notice of Removal was mailed, postage prepaid to:

**Henry Davis**
**8001 Boundry Drive**
**Forestville, Maryland 20747**

**Pili Robinson**
**Andrew T. Wise, Esq.**
**Miller & Chevalier Chartered**
**655 15th Street NW**
**Suite 900**
**Washington, DC 20005**

_____
Leah Brownlee Taylor
Assistant Attorney General

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

**FILED**

**November 29, 2006**

**Henry Davis,**
8001 Boundry Drive
Forestville, Maryland 20747

                      *Plaintiff*

v.

**Department of Youth Rehabilitation Services**
Youth Services Center
1000 Mt. Olivet Road, N.E.
Washington, D.C. 20002

**Vincent Schiraldi, Director**
1000 Mt. Olivet Road, N.E.
Washington, D.C. 20002

**David Brown, Deputy Director**
8300 Riverton Court
Laurel, Maryland 20724

**Mark Schindler, Chief of Staff**
8300 Riverton Court
Laurel, Maryland 20724

**LaVern Evans, Superintendent**
8300 Riverton Court
Laurel, Maryland 20724

Civil Action No.: _____



FILED
CIVIL ACTIONS BRANCH

NOV 29 2006

Superior Court
of the District of Columbia
Washington, D.C.

and



**Dexter Dunbar,** Deputy Superintendent
of Treatment
8300 Riverton Court
Laurel, Maryland 20724


**D.J. Thomas,** Deputy Superintendent
of Operations
8300 Riverton Court
Laurel, Maryland 20724


**Cathy Ohler,** Human Resources
Specialist/Representative
8300 Riverton Court
Laurel, Maryland 20724


**Pili Robinson,** Senior Consultant to
the Department of Youth Rehabilitation Services
The Missouri Youth Service Institute
1906 Hayselton, Drive
Jefferson City, MO 65109

*Defendants*

## COMPLAINT

Plaintiff, Henry Davis, complains of defendant, Department of Youth Rehabilitation Services, et al as follows:

1. This court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1331, as this action involves federal violations.

2. Venue properly rests with this court, pursuant to 28 U.S.C. Section 1391(e), as the Defendant is an agency of the District of Columbia and the Plaintiff is a former employee of the Defendant.

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

## PARTIES

3. Pro se litigant, Henry Davis (hereinafter "Plaintiff").

4. The Defendants are the Department of Youth Rehabilitation Services, an agency of the District of Columbia, (hereinafter "DYRS"), Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, Dexter Dunbar, David Thomas, Cathly Ohler, and Pili Robinson (hereinafter "Defendant").

5. Plaintiff was terminated in mass firing with nine managers, terminating more than 33% of the management workforce at the Oak Hill Youth Center.

I.   Statement of the Case

This complaint is before the Superior Court of the District of Columbia on the grounds that he was wrongfully terminated. The Plaintiff contends that the Department of Youth Rehabilitation Services terminated his employment, at the recommendation of LaVern Evans, Superintendent, in retaliation for his participation in an investigation (witness) of sexual harassment claims against other managers and for filing a grievance through the union against the agency for violating the union contract in regard to paying the Plaintiff for work he performed beyond 120 days (Article 10 scetion 1(f) (g) of the Collective Bargaining Agreement, and DPM, Chapter 8, Section 9.4 (a) (b) 1, 2,3, and (c) 9.5 – Acting in higher position beyond 120 days without compensation.

Wherefore, the Plaintiff demands judgment against Defendant(s) in the sum of $1,700,000.00, and reinstatement of a career service status position within the agency for which he is qualified.

The Plaintiff contends the termination to be a wrongful termination and that the defendants' actions were adversarial, malicious, and retaliative, resulting in discrimination, actionable retaliation to activity that affected the terms and conditions of the Plaintiff's employment, breach of contract, tortious interference with the contract, intentional infliction of emotional stress, negligent infliction of emotional stress, retaliatory discharge, and defamation of the Plaintiff's character.

The termination decision as well as the inauspicious actions of the defendants have caused personal injury to the Plaintiff, causing emotional stress, economic losses, and other punitive damages, and for the reasons expressed below, the Plaintiff concludes that the Department of Youth Rehabilitation Services' charge upon which the termination decision was based is a wrongful termination.

Wrongful discharge actions for violating public policy can be premised on one of three grounds:
   a) Explicit legislative statements prohibiting discharge, discrimination or adverse

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

treatment of employees who act in accordance with the statutory right or duty;

     b) "Legislative expression of policy" - for example, discharging an employee for refusing to violate the law during employment; or,

     c) Retaliatory discharge.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88-352, §704, 78 Stat.257, as amended, 42 U.S.C. §2000e-2(a). A separate action of the Act – its anti-retaliation provision – forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding of investigation. §2000e-3(a).

In Philip's v Butterball Farms Co, 448 Mich 239 (1995), the Michigan Supreme Court resolved a conflict in the Court of Appeals and held that a claim of retaliatory discharge sounds in tort and not in contract. Consequently, the full tort remedies are available for a retaliatory discharge in violation of public policy.

II.    Background and Director's Decision

A.    The Facts

     The facts, which are set forth in the Director's decision, are briefly summarized here. The Director terminated the Plaintiff on October 19, 2006, at approximately 1:00 p.m., for "no cause" and because the Plaintiff was classified as an at-will employee under the Management Supervisory Service (MSS).

David Brown, Deputy Directory of DYRS, David Thomas, Deputy Superintendent of the Oak Hill Youth Center (OHYC), and Cathy Ohler, Human Resources Specialist / representative were present at time of termination.

October, 1989 the Plaintiff joined DYRS as a Career Service employee and collective bargaining unit member.

February, 2001 through May 2004 ( DS-8), performed duties of higher position as Acting Unit Manager DS-11.

April, 2002 2003, and 2004 received outstanding evaluations.

**Henry Davis v. Department of Youth Rehabilitation Services, et al**
**November 29, 2006**

December 15, 2003 grievance filed with the union.

August, 2004 DYRS settled grievance with retroactive pay to February 2003. DYRS agreed not to refer to the settlement incorporated by reference or treat as precedence for any other grievance or case action.

August 2005, Plaintiff suffered stroke.

November 2005, Plaintiff returned to work after suffering stroke.

January 2006, Plaintiff requested transfer to Youth Services Center (YSC) for health reasons at recommendation of personal physician. Request denied by LaVern Evans without explanation.

March 2006, Plaintiff requested transfer to YSC for health reasons at recommendation of personal physician. Request denied by LaVern Evans for reason that there was a shortage of staff at the Oak Hill Youth Center (OHYC).

May 2, 2006, Plaintiff refused appointment from Career Service to Management Supervisory Service (MSS).

May 5, 2006, Superintendent Evans ordered Linda Cruz-Packer (former employee terminated on 10/19/06, and then Acting Shift Commander) to find something to write Plaintiff up for, so that [he] Evans can terminate the Plaintiff.

May 5, 2006, Superintendent Evans, [again] ordered Ms. Packer to write the Plaintiff up for abandonment of post, without provocation.

May 2006, DYRS violated terms of settlement agreement when informed Plaintiff that the decision to move him to MSS was as a result of settlement agreement.

July 28, 2006 (on or about), Plaintiff received letter of admonition from Superintendent Evans. Plaintiff discussed letter with Deputy Director, David Brown, disputing cause for letter.

July 28, 2006, Plaintiff reported to Deputy Director, Brown, that he was being harassed by Superintendent Evans and Deputy Superintendent David J. Thomas.

August 10, 2006, Plaintiff received second letter of admonition from Evans.

August 23, 2006 two employees informed Plaintiff that they were instructed to "get something on him" by Superintendent Evans. The employees warned Plaintiff to "watch your back, Evans wants to fire you".

5

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

October 19, 2006, Fitzgerald Fant, Human Resource Manager and Equal Employment Opportunity Officer (EEO), participated in an active roll concerning the termination of the Plaintiff and several MSS mangers that were fired that day. Mr. Fant's dual roles presents a conflict of interest and prohibited the Plaintiff form receiving fair and impartial treatment regarding personnel matters.

October 19, 2006, Lavern Evans [also] stated to Plaintiff that his transfer to MSS was as a result of his settlement agreement.

October 19, 2006, Plaintiff received written notice of termination, effective November 3, 2006 signed by Vincent Schiraldi and a copy of an acknowledgement of termination letter signed by David Brown and Lavern Evans. Plaintiff was prohibited from returning to her work site to retrieve her personal property, and asked to turnover all DYRS' keys and property. The Plaintiff responded accordingly. Plaintiff was informed by Cathy Ohler that the termination was neither grievable nor appealable.

At the time of the termination, Plaintiff informed David Brown, David Thomas, and Cathy Ohler, that he had not accepted the MSS appointment nor did he sign any acknowldgement of acceptance. David Brown stated that he *was aware* that the Plaintiff had not agreed to give up his Career statius position for one of MSS.

October 19, 2006, Vincent Schiraldi, David Brown, Mark Schindler, LaVern, Evans, Dexter Dunbar, D. J. Thomas, and Fitzgerald Fant, Human Resources Director at DYRS, made a public announcement to the DYRS staff at the OHYC the Plaintiff had been terminated and that the Plaintiff was no longer allowed on the premises, and that the Plaintiff failed to follow the direction the Director was taken the agency.

October 20, 2006 Plaintiff requested a copy of official personnel file.

October 20, 2006, Vincent Schiraldi, David Brown, Mark Schindler, LaVern, Evans, Dexter Dunbar, D. J. Thomas, and Fitzgerald Fant, Human Resources Director at DYRS, made a public announcement to the DYRS staff in a town hall meeting, that the Plaintiff had been terminated and that the Plaintiff was no longer allowed on the premises, and that the Plaintiff failed to follow the direction the Director was taken the agency.

October 20, 2006, the Plaintiff and several managers terminated in the October 19, 2006 mass firing, contacted the District of Columbia City Council, informing them of the mass firing that took place on October 19, 2006.

October 23, 2006, Councilmember Marion Barry requested an explanation form Director Schiraldi of the rationale for the mass firing on October 19, 2006.

6

**Henry Davis v. Department of Youth Rehabilitation Services, et al**
**November 29, 2006**

October 24, 2006 (on or about), Mark Schindler, Chief of Staff, in response to Councilmember Barry's request, reported via telephone, to E. Faye Williams, Esq., then Chief of Staff for Councilmember Barry, that *the Plaintiff was terminated because he was incompetent and rarely came to work.*

October 25, 2006, Mayor Elect and Chairman of the Human Services Committee, Adrian Fenty, requested an investigation of the rationale for the mass firings on October 19, 2006.

October 25, 2006 (on or about), the Plaintiff and several managers terminated in the October 19, 2006 mass firing, contacted Judge Herbert Dixon, overseer of the Jerry M. Consent Decree that the DYRS is governed by in part, informing him of the mass firing that took place on October 19, 2006 that places the DYRS out of compliance with the consent decree.

October 25, 2006 (on or about), Plaintiff received telephone call from a representative of Vincent Schiraldi's office informing him that Mr. Schiraldi will not be meeting with him. Plaintiff informed the representative, that he had not requested a meeting with the Director.

### B.   The Director's Decision

The Director reports that he concurred with the recommendation of Superintendent Evans.

The Director reported via termination letter that he terminated the Plaintiff in accordance with §3818 of the District Personnel Manual (DPM); via Chief of Staff as a result of the Plaintiff's incompetence and failure to report to work; and via direct email as a result of numerous reports of the Plaintiff's poor performance and progress at OHYC. The reasons cited by the DYRS for the Plaintiff's termination are ambiguous and violate the D.C. Official Code, numerous employment laws, and several of the DYRS policies. Therefore, it was impossible for the Plaintiff to receive fair and unbiased treatment through the termination process implemented by the Director.

The Director identified performance issues and attendance issues as reasons, in part, for terminating the Plaintiff. The Director failed to provide any documented proof of poor performance of the Plaintiff in his official capacity of Supervisory Correctional Officer/Unit Manager. The Plaintiff enforced policy where conduct of the residents were out of compliance. In addition the Plaintiff has not been absent on unapproved leave since his hire. Therefore, the validity of what is alleged by the DYRS depends on credibility and motivation.

The Director failed to follow the parameters of the performance management program, D.C. Official Code § § 1-609.51 through 1-609.58 (2001), which is the systematic process by which an agency involves its employees, as individuals and members of a group, in improving performance in the accomplishment of agency mission and goals (DPM 1402.1). Subsequently, the Director failed to a) Communicate and clarify organizational goals to employees; (b) Identify individual

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

and, where applicable, team responsibilities and accountability for accomplishing organizational goals; (c) Identify and address developmental needs for individuals and, where applicable, teams; (d) Assess and improve individual, team, and organizational performance; (e) Use appropriate measures of performance as the basis for recognizing and rewarding accomplishments; and (f) Use the results of performance appraisal as a basis for appropriate personnel actions (DPM 1402.2a-f).

Further, as an employee of the District of Columbia government, the Plaintiff was never informed of any deficiencies in his work performance in a timely manner, throughout the rating period so that, to the extent possible, he is given an opportunity to overcome such deficiencies and improve his performance (DPM 1402.3a). Each supervisor shall complete a Performance Plan outlining what is expected for each covered employee (DPM 1406.1). The Plaintiff was not given a Performance Plan as dictated in the DPM. Therefore, the reason of poor performance is not valid if the DYRS has failed to identify and discuss with the Plaintiff performance competencies, and how each competency would relate to the Plaintiff's job. (DPM 1406.1 through 1409.3).

Based on the facts presented by the Plaintiff, the Plaintiff was in compliance and committed no wrong doings. Further, the inclusion of the stated events as a basis, in part, for the termination of the Plaintiff is not supported by any factual information of any wrong doing. Therefore, the Plaintiff contends that the termination of the Plaintiff was indeed a wrongful termination.

In respect to the Director's report of numerous meetings and debates regarding the Plaintiff's termination, the Plaintiff contends that the recommendations the Director reports of having received regarding the Plaintiff, are based upon the personal opinions and word of mouth of the Executive Management team, few staff, and few residents as opposed to fact. Further, the Director does not include any input from the Plaintiff, as logic, and *fair* employment practices dictate. Overall, the Director's decision to terminate the Plaintiff reflects the biased opinions and distorted interpretations of the Executive Management team. The Director has failed to show any documented proof of any alleged poor performance of the Plaintiff as it relates to the OHYC progress and program operations of the Plaintiff. Therefore, the Plaintiff contends that the termination decision executed by the Director is indeed a wrongful termination.

The Plaintiff was not afforded the opportunity to remain in his Career Service appointment, nor was he given a 30-day separation notice after refusing to accept a MSS position. The Director failed to adhere to the DC Code. Pursuant to § 1-609.58 (a) persons currently holding appointments to positions in the Career Service who meet the definition of "management employee" as defined in § 1-614.11(5) shall be appointed to the Management Supervisory Service **unless the employee declines the appointment. Persons declining appointment shall have priority for appointment to the Career Service if a vacant position for which they qualify is available within the agency and is acceptable to the employee.** If no such vacant position is available, a 30-day separation notice shall be issued to the employee, who shall be entitled to severance pay in the manner provided by § 1-624.09.

8

**Henry Davis v. Department of Youth Rehabilitation Services, et al**
**November 29, 2006**

The Plaintiff contends that when he never accepted the appointment of MSS, and there are no signed statements of acknowledgement of acceptance of the MSS position.

This Plaintiff claims a hostile work environment predicated upon retaliation. The Superintendent's overall negative attitude toward the Plaintiff is discriminatory and it contributed to the creation of a hostile work environment for the Plaintiff.

The fact that the Plaintiff does not have a current performance evaluation from the DYRS that reflects any deficiencies in program operations or management functions is evident that the Plaintiff's job performance is not the issue as implied by the DYRS. Therefore, the Plaintiff contends that the Director's decision to terminate him was malicious as well as discriminatory.

Further, this behavior warrants an in depth look into the rationality behind the decision to terminate the Plaintiff. The Director has violated the DC Human Rights Act and failed to act appropriately and in adherence to the *DPM* in making his decision to terminate the Plaintiff. Therefore the Plaintiff contends that the Director's termination decision was indeed a wrongful termination.

III.   The Plaintiff's Exceptions

A.   Discrimination

The Plaintiff contends that he was terminated for his participation in an investigation (witness) of sexual harassment claims against other managers and for filing a grievance through the union against the agency for violating the union contract in regard to paying the Plaintiff for work he performed beyond 120 days. The Plaintiff as a government employee had the right *not to be* terminated without sufficient justification. The Plaintiff had the right not to be disciplined or fired based on speech that involves matters of public concern. Further, the Plaintiff had the right to have the bargaining agreement adhered to by the DYRS.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88-352, §704, 78 Stat.257, as amended, 42 U.S.C. §2000e-2(a). A separate action of the Act – its anti-retaliation provision – forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding of investigation. §2000e-3(a).

The National Labor Relations Act, to which the Court has "drawn analogies ... in other Title VII

9

**Henry Davis v. Department of Youth Rehabilitation Services, et al**
**November 29, 2006**

contexts," *Hishon v. King & Spalding,* 467 U. S. 69 , n. 8 (1984), provides an illustrative example. Compare 29 U. S. C. §158(a)(3) (substantive provision prohibiting employer "discrimination in regard to ... any term or condition of employment to encourage or discourage membership in any labor organization") with §158(a)(4) (retaliation provision making it unlawful for an employer to "discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter"); see also *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U. S. 731, 740 (1983) (construing anti-retaliation provision to "prohibi[t] a wide variety of employer conduct that is intended to restrain, or that has the likely effect of restraining, employees in the exercise of protected activities," including the retaliatory filing of a lawsuit against an employee); *NLRB v. Scrivener,* 405 U. S. 117, 121–122 (1972) (purpose of the anti-retaliation provision is to ensure that employees are " 'completely free from coercion against reporting' " unlawful practices).

When the Plaintiff accepted the settlement offer he considered it an implied covenant of good faith, fair dealing, and an expectation to work. However, the DYRS breached that agreement when they referenced the settlement agreement as a basis for placing the Plaintiff in a MSS position. Further, the rights and obligations set forth in the DPM, §3818 Management Supervisory Service Part I has unresolved and/or ambiguous and conflicting policy regarding the rights and expectations of MSS employees.

Consequently, the Defendants' actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

B.   Retaliatory Discharge

The Plaintiff contends that he was terminated for taking steps seeking to enforce his legal rights. The laws prohibiting discrimination in the work place also prohibit retaliatory action being taken against an employee by an employer because the employee has asserted rights or made complaints under those laws.

The Defendant's actions prohibited by the anti-retaliation provision of Title VII adversely affect the Plaintiff's compensation, terms, conditions, and privileges of employment.

Section 704(a) sets forth Title VII's anti-retaliation provision in the following terms:

> "It shall be an unlawful employment practice for an employer *to discriminate against* any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." §2000e–3(a) (emphasis added).

10

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

The Plaintiff was particularly vulnerable, however, when it came to making his complaint. The Plaintiff's economic livelihood depended on the Defendant, which held the authority to discipline and discharge him. Understandably, the Plaintiff was somewhat reluctant to stand up for his rights, or make the complaint, for fear that he would lose his job. Enforcing his rights includes filing a grievance with the union.

Further, the Plaintiff has performed his job according to his employer's legitimate expectations. This is evident upon review of his personnel file, where there are no adverse or corrective actions, actions, no documentations of counseling for poor work performance, nor any documentation of abuse of leave and leave restriction. Any such documentation could be an indication of not meeting expectations. Despite meeting the employer's expectations, the Plaintiff has suffered a materially adverse employment action. In addition, the Plaintiff was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

Specifically, during or about the latter part of 2004, another employee assigned to the MSS, was allowed to transition back to his Career Service after refusing the MSS appointment. The Plaintiff therefore contends, that the DYRS, et al violated its own employee rules in meting out the discipline.

Most rights are extended to all of an agency's employees. Making rights an individualized benefit, applicable to one employee but not others is technically infeasible because doing so causes too great a violation of workers', employers', or society's sense of justice.

C.  <u>Defamation - Slander</u>

The Plaintiff contends that the Director and Mark Schindler, Chief of Staff published a defamatory statement(s) of and concerning the Plaintiff, the statement(s) were false, the Director and Mark Schindler were both negligent in publishing the false and defamatory statement(s), and the Plaintiff has suffered actual injury/harm as a result of the publication.

During their meeting with the staff at the Plaintiff's work site, and in response to Councilmember Barry's request, the Director, and Mark Schindler, repeated defaming statements made to them as they gathered information from the "many resources" the Director proclaimed to have in the institution. These statements were/are defamatory because they hold the Plaintiff up to scorn,

11

**Henry Davis v. Department of Youth Rehabilitation Services, et al**
November 29, 2006

hatred, ridicule, and contempt in the minds of any considerable and respectable segment of the community.

The Director and Mark Shindler were negligent in publishing the defamatory statement(s). The defamatory statement(s)was/were published as a result of their failure to exercise the degree of care in ascertaining whether the information was true, false, or defamatory, that would be exercised by a reasonably prudent person in the same or similar circumstances. Under this standard, the Director and Mark Schindler were required to act reasonably in checking on the truth or falsity or the defamatory character of the statement(s) before publishing it.

The Plaintiff takes this issue of defamation very seriously. The Plaintiff is a professional and such defamatory statements have negatively effected his propensity for future earnings/work in his field. These factors should be taken into consideration in determining whether the Director and Mark Schindler acted as a reasonably prudent person under the circumstances.

The Plaintiff contends that Mark Schindler's verbal report to Councilmember Barry's Chief of Staff is comprised of false statements that have damaged the Plaintiff's reputation.

D.  The Right t Due Process

The Director deprived the Plaintiff of liberty without due process when he publicized the Plaintiff's termination. The *Fifth Amendment* prohibits the government for depriving an individual of liberty or property without due process. In the employment situation, discipline or discharge, can in some circumstances, constitute a deprivation of the employee's liberty or property interest. In such case the government must provide due process before firing or disciplining. Government employees' liberty interest in their job are involved if:

1. **the way employees are disciplined or dismissed impugns their character as the result of a false characterization; and**

2. **the stain on employees' character is made public.**

In determining whether government employees have property interest in their job, the courts look at whether there is a written or implied contract granting them a property interest in the job or if a statute gives them a property interest in the job. The DYRS ignored the bargaining unit agreement and the settlement agreement regarding certain employment rights for the plaintiff. When liberty or property interests are at stake, the government must give the employee due process before taking away the interest. Due process requires that:

12

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

- employees be given notice of the reason for being discharged;

- a hearing be held at which employees are given the opportunity to present evidence in their behalf and to hear the evidence presented against them; and

- a decision be made by an impartial third-party decision-maker based on the evidence presented at the hearing.

According to the DPM, MSS employees have no appeal or grievance rights. In this case, the Director and a committee consisting of himself, the Deputy Director of DYRS, the Superintendent of OHYC, the Deputy Director of Treatment, the Deputy Director of Operations, the Human Resource Manager/EEO Officer, a Human Resource Specialist, and a consultant have deprived the Plaintiff of his right to due process when they decided that the Plaintiff should be terminated, when they published defamatory statements about the Plaintiff, and when they publicized the Plaintiff's termination throughout the agency.

Since the Director refused to meet with the Plaintiff regarding the decision to terminate him, and act fairly with respect to the termination process, the Plaintiff can only assume that the actions of DYRS are malicious and retaliatory. The Director, failed to afford the Plaintiff his due process.

IV. Conclusions

As a pro se litigant the Plaintiff need not be "exact." Haines v. Kerner 404 U.S. 519 (1972). However, the Plaintiff has been quite specific in alleging that the Defendant wrongfully terminated him and utilized disinformation, public defamation of character, and intimidation, to encourage public support for regulations under the color of which the Defendant has deprived the Plaintiff of rights and privileges guaranteed under the Constitution of the United States.

The actions of the Director may be deemed appropriate if the evidence points but one way and is susceptible to no reasonable inferences which may support the Plaintiff's position. Moreover, the integrity of the investigation and the fairness of the termination decision are highly questionable.

The actions of the Director were damaging toward the Plaintiff. The Director violated the Plaintiff's rights under the First and Fifth Amendments, severely punished the Plaintiff for exercising his rights, and published defamatory statement(s) about the Plaintiff that have caused him emotional distress. More importantly, through examination of the Director's decision, the Plaintiff has discovered that the Director's termination decision of the Plaintiff was also a result of his adhering to policy. In addition, the termination process was severely flawed. It did not

Henry Davis v. Department of Youth Rehabilitation Services, et al
November 29, 2006

allow for a fair and unbiased process to take place. It was one-sided and described by some of the staff after attending the meeting as a "set-up".

An important fact to note is that the Superintendent created a very hostile working environment for the Plaintiff. Through poor management decisions such as giving directives to the Plaintiff's colleagues to "write him up" without justification, and the decision to use the frivolous write-ups as cause to terminate him, placed the Plaintiff at a clear disadvantage in performing his duties.

The Superintendent engaged in behavior that clearly discriminated and undermined the responsibility of the Plaintiff and penalized him for adhering to the agency policy. The entire termination process was based on unethical practices. These actions, warrants the just resolution of compensatory and punitive damages for the Plaintiff.

Further, the DYRS, et al stated that the Plaintiff is incompetent and rarely came to work. This is a gross slandering of the character of the Plaintiff. The Plaintiff has documented as well as verbally reported, the illegal and unethical behavior of other management staff and submitted it to the Superintendent and Deputy Director. It appears that the decision of termination only applies in cases where the Superintendent is the initiator of a complaint.

The Plaintiff believes that the Court has the exclusive functioning of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact. The line is drawn by the laws of logic.

Finally, the Plaintiff has documented proof to support all the statements made in this complaint. However, the law suggests that the burden of proof is not on the Plaintiff to his innocence, but on the employer to prove his guilt. In this country, the Plaintiff is presumed innocent until proven guilty. The DYRS et al has not supplied through any of the information given to the Plaintiff factual data that would support even a part of the termination decision.

Therefore, the Plaintiff respectfully request that the Court correct this matter of wrongful termination and make the Plaintiff whole. The Plaintiff requests that he is awarded compensatory and punitive damages in the combined total of $1,700,000.00 for the defendants misconduct and violations of public policy, and reinstatement of a career service status position within the agency for which he is qualified.

Henry Davis
8001 Boundry Drive
Forestville, Maryland 20747

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Henry Davis
8001 Boundry Drive
Forestville, Maryland 20747

## DEFENDANTS

Department of Youth Rehabilitation Services, Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, Dexter Dunbar, D.J. Thomas, and Cathy Ohler

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**ATTORNEYS (IF KNOWN)**

LETICIA L. VALDES [0461327]
LEAH BROWNLEE TAYLOR [433298]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 442-9845; (202) 727-6295

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (If Voting Rights Act) |

**V. ORIGIN**
○ 1 Original Proceeding   ● 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. §§1441 and 1446,,

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 12/29/06    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.