**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HENRY DAVIS )
8001 Boundary Drive )
Forestville, Maryland 20747 )
)
Plaintiff )
v. )
)
) **Civil Action No: 06-2264**
)
**Pili Robinson, Senior Consultant** ) **(GK)**
Department of Youth Rehabilitation )
The Missouri Youth Service Institute )
1906 Hayselton, Drive )
Jefferson City, MO 65109 )

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Pursuant to your order dated February 7, 2007, the plaintiff, HENRY DAVIS, hereby strongly opposes the December 26, 2006 motion of the defendant put forth to dismiss the above complaint against him pursuant to Civ. P. Rule 12 (b) (5) (6) and other arguments filed by Attorney Andrew T. Wise, counsel for Pili Robinson.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSTION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

1. On November 29, 2006, Plaintiff made a prima facie case in that the Plaintiff contends the termination to be a wrongful termination and that the defendants' actions were adversarial, malicious, and retaliative, resulting in discrimination, actionable retaliation to activity that affected the terms and conditions of the Plaintiff's employment, breach of contract, tortious interference with the contract, intentional infliction of emotional stress, negligent infliction of emotional stress, retaliatory discharge, and defamation of the Plaintiff's character.

RECEIVED

MAR 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2. The defendant is a paid consultant of the Department of Youth Rehabilitation Services (DYRS), procured by contract.

3. The defendant was presented by the Director of DYRS as **an expert in youth services and programs.** In addition, the defendant described his skills and abilities as expert level in youth services and programs.

4. The complaint, summons, and initial order were mailed to the defendant at his business address in Jefferson City Missouri by certified mail.

5. Service of process was completed by mailing a copy of the complaint, summons, and initial Order by certified mail, return receipt requested (SCR-Civ. 4(e) (2) to the defendant.

6. Defendant has set on interview boards and inputted on staff disciplinary decision, in so determining retention and firing status, and making decisions on potential employee's becoming DYRS staff.

7. Mark Stewart, the person authorized to sign for and receive mail delivered to the defendant's place of business in Jefferson City, Missouri, signed for and received the copy of summons, complaint, and initial order mailed to the defendant.

8. Defendant's attorney, Mr. Wise, confirmed defendant's address (The Missouri Youth Service Institute, 1906 Hayselton Drive, Jefferson City, MO. 65109) by representing defendant's address in motion from defendant.

9. In Clair v. District of Columbia Department of Employment Services, the proper measure of damages in a public-policy wrongful discharge action is the sum of any wages that an employee actually earned or could have earned with reasonable diligence,

additionally, an employee may recover for any other tangible benefit lost as a result of the termination.

10. Since the decision in Foley v. Interactive Data Corporation, damages for emotional distress and punitive damages can only be recovered in public policy cases, discrimination cases and independent tort cases.

## ARGUMENT

Defendant argues that the "Complaint should be dismissed against him pursuant to Superior Court Civil Rule 12(b)(5) for insufficiency of service process". See Defendant's Memorandum of Points and Authority at p.3. Defendant further wrongly argue that the "Complaint should be dismissed pursuant to Superior Court Rule 12(b) (6) for failure to state a claim upon which relief can be granted." Id at p.3.

### A. Defendant Is Not Enttled to Relief Under Civil Rule 12(b)( 5)of the Superior Court of Civil Procedure

The defendant's motion misapplies the relevant facts of law. The plaintiff met his obligation to serve a copy of the summons, along with the complaint and initial order upon the defendant in accordance with the provisions of Superior Court Civ. R 4(b)(1)(4). The defendant argues that the plaintiff failed to follow the procedures as set forth in Superior Court Civ. R. 4(d)(1). See defendant's Memorandum of Points and

Authorities at p.3. According to the Superior Court Rules of Civil Procedure, the provision of Civ. R. 4(d) is vacant. The District of Columbia Superior Court Civil Rules establish in pertinent part, parallel service requirements to those contained in Rule 4(c)(2) of the Federal Rules of Civil Procedure. See DC SUPER. CT. R (e) (2).

United States District Court Rules for the District Of Columbia, Rule LCvR 5.3 relating to proof of service states that proof shall show the date and manner of service , and may be by certificate of an attorney of record or other proof satisfactory to the Court. Failure to make proof of service does not affect the validity of service. (120 (b) (5) of the Superior Court of Civil Procedure is no longer relevant since this case is now under the United States District Court rules.

Rule 4 (c ) of the DC Superior Court Rules permits service to be effective upon an individual "by mailing a copy of the summons, complaint and initial order to the person to be served by registered or certified mail, return receipt requested. D.C. SUPER.CT. CIV.R. 4( c ) (3). Leaving a copy of the complaint and summons at an individual defendant's place of business constitutes valid service if it id left in the hands of "an agent authorized to appointment or by law to receive service of process. "FED.R>CIV>P 4(e). Mark Stewart was identified as the person authorized at the defendant's place of business to receive and sign for mail addressed to the defendant. See Parker v. Frank Emmet Real Estate. 451 A. 2d 63. 66 (D.C. 1982); Morfessis v. Marvins Credit, 77A.2d.178. 179. (D.C. 1950).

The defendant is a business acquaintance of Deputy Superintendent Dexter Dunbar. While accompanying Dunbar around the facility the defendant passed out business cards listing a Jefferson City, Missouri address as his place of business. A reasonable person would assume that the defendant intends for all matters related to his business are to be forwarded to his business address. Further, the defendant received the summons the complaint, the initial order and the attended complaint and responded to the complaint in a timely fashion by filing a motion to dismiss the complaint against him via legal counsel. In addition, the defendant's counsel lists the defendant's address on his response papers i.e. motion to dismiss with his Jefferson City, Missouri address. Based on the points stated above, the defendant's argument of insufficiency of service of process is not valid.

B. **Defendant is Not Entititled to Relief Under Rule 12(b) (6) of the Superior Court Rule of Civil Procedure**

Case no longer in Superior Court Plaintiff finds no reason to respond.

This Employee contends that he was wrongfully terminated. The Employee contends that the Department of Youth Rehabilitation Services terminated his employment, at the recommendation of LaVern Evans, Superintendent, in retaliation for his participation in an investigation (witness) of sexual harassment claims against other managers and for filing a grievance through the union against the agency for violating the union contract in regard to paying the Employee for work he performed beyond 120 days (Article 10

section 1(f) (g) of the Collective Bargaining Agreement, and DPM , Chapter 8, Section 9.4 (a) (b) 1, 2,3, and (c) 9.5 – Acting in higher position beyond 120 days without compensation.

Wherefore, the Employee request the court to intervene, and reinstatement of a career service status position within the agency for which he is qualified, and or award him damages for the wrongful termination.

The Employee contends the termination to be a wrongful termination and that the Agencies' actions were adversarial, malicious, and retaliative, resulting in discrimination, actionable retaliation to activity that affected the terms and conditions of the Employee's employment, breach of contract, tortuous interference with the contract, intentional infliction of emotional stress, negligent infliction of emotional stress, retaliatory discharge, and defamation of the Employee's character.

The termination decision as well as the inauspicious actions of the Agency have caused personal injury to the Employee, causing emotional stress, economic losses, and other punitive damages, and for the reasons expressed below, the Employee concludes that the Department of Youth Rehabilitation Services' charge upon which the termination decision was based is a wrongful termination.

Wrongful discharge actions for violating public policy can be premised on one of three grounds:

a) Explicit legislative statements prohibiting discharge, discrimination or adverse treatment of employees who act in accordance with the statutory right or duty;

b) "Legislative expression of policy" - for example, discharging an employee for refusing to violate the law during employment; or,

c) Retaliatory discharge.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88-352, §704, 78 Stat.257, as amended, 42 U.S.C. §2000e-2(a). A separate action of the Act – its anti-retaliation provision – forbids an employer from "discriminating against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding of investigation. §2000e-3(a).

In Philip's v Butterball Farms Co, 448 Mich 239 (1995), the Michigan Supreme Court resolved a conflict in the Court of Appeals and held that a claim of retaliatory discharge sounds in tort and not in contract. Consequently, the full tort remedies are available for a retaliatory discharge in violation of public policy.

The employee was hired on or about October 9, 1989 as a Social Service Assistant. He was Riffed in September 1993, and returned back to work on or about March of 1998, as a Juvenile Correctional Officer, where he worked as an Acting Unit Manager from 2000

until June 21, 2006, at which time he became the Acting Shift Commander for the PM Tour.

The employee is a Veteran and served in the United States Marine Corp and is entitled to Veterans Preference, and received an honorable discharge on July 24, 1984.

It should be noted that the employee never received any documentation or letter from personnel assigning him official as an Acting Unit Manager.

Subsequently, employee filed a grievance for this failure/omission by the Agency, resulting in a settlement agreement between the employee and the agency, which resulted in a promotion to a Career Service position of DS-007-10-10, **(not an MSS position)** of Supervisory Correctional Officer, effective February 18, 2003. (See attachment )

The employee was and remained a **career service employee** who was placed in several acting MSS position w/o proper written official authorization from the Department of the District of Columbia Office of Personnel (hereinafter "DCOP"). Instead all of the employee appointment's where made through the Office of the Superintendent, without the sanction or authorization from DCOP.

The plaintiff contends and has reason to believe that the defendant in his capacity of Senior Consultant Expert of Youth Services and Programs to the DYRS, provided advice to the Director of DYRS that contributed in part to the Director's decision to terminate the Plaintiff. Robinson did this by dictating policy and procedures to Staff at management meetings. Stating on numerous occasions that DYRS did not need OD's

(Shift Commanders) which was the acting position plaintiff held prior to being dismissed. Defendant was constantly dictating policy and procedure to government employee's. With no authorization he constantly checked with employee's at the gate on other MSS staff comings and goings. Even though he protested that he was not a DYRS employee defendant was allowed to set on interview boards and was allowed to evaluate and make decision concerning the hiring and firing of potential and former employees. In addition, defendant was allowed to set staff schedules and participate in employee's reassignments. The Bolam principle addresses the first element. However, Hedley Bryne & Co. Ltd. V. Heller & Partners Ltd. (1964) AC 465 created the rule of "reasonable reliance" by the claimant on the skills of the defendant.

Further the defendant. Often disclosed in management meetings, in which plaintiff was present, the authority granted to him by the Director to oversee parts of the Oak Hill Youth Center.

The Plaintiff in this case from this point on will be referred to as employee states the following:

1.) Employee was employed as a DS-10-10 Supervisory Youth Correctional Officer, working in an acting position as a limited manager at the Respondent's Oak Hill Youth Center. In 2003 all appropriate employees at the DS-11 and above grade level, who supervised subordinate employees, were converted to the MSS designation, and all of them signed an agreement acknowledging the conversion.

2.) Employee never requested nor was he converted to the MSS Status. Respondent Employee, LaVern Evans, who previously occupied the position of Unit Manager, DS-10, was promoted to the DS-11 level and subsequently converted to the MSS status.

3.) Employee is a Veteran and served in the United States Marine Corp and is entitled to Veterans Preference. Subsequently, Employee, as a Union member, filed a grievance against the Respondent. As a result of that grievance, the Union and the Respondent entered into a settlement agreement. The settlement agreement

required the Respondent to promote the employee to the position of DS-10, Unit Manager, and compensated the Employee for one years salary as a DS-10.

The Agreement does not contain any provisions for the Employee to be converted to the MSS Status. **Note:** On or about November 3, 2006, the Respondent terminated the Employee as a result of the Employee's status as an MSS Employee.

4.) Upon information and belief the Respondent, it's agents, servants, and or employees, acting within the scope of their employment, signed the Employee's name to documents designating the Employee as an MSS Employee, and documenting is consent to become an MSS Employee.

Employee has never consented to be an MSS Employee. Employee has never signed any papers agreeing to be converted to the MSS status. Employee did not authorize any party and/or third person to sign his name on his behalf.

5.) The Employee was and remained a Career Service Employee who was placed in several acting MSS position w/o proper written official authorization from the Department of the District of Columbia Office of Personnel (DCOP). Instead all of the Employee's appointment where made through the Office of the Superintendent, without the sanction or authorization from DCOP.

6.) Employee subsequently received Personnel Action Form indicating that he was subject to a Reduction in Force. Alternatively, if there was a Reduction in Force it did not conform to the District of Columbia Personnel Manual DPM.

7.) The Respondent failed to follow the parameters of the performance management program, D.C. Official Code § § 1-609.51 through 1-609.58 (2001), which is the systematic process by which an agency involves its employees, as individuals and members of a group, in improving performance in the accomplishment of agency mission and goals (DPM 1402.1). Subsequently, the Respondent failed to a) Communicate and clarify organizational goals to employees; (b) Identify individual and, where applicable, team responsibilities and accountability for accomplishing organizational goals; (c) Identify and address developmental needs for individuals and, where applicable, teams; (d) Assess and improve individual, team, and organizational performance; (e) Use appropriate measures of performance as the basis for recognizing and rewarding accomplishments; and (f) Use the results of performance appraisal as a basis for appropriate personnel actions (DPM 1402.2a-f).

Further, as an Employee of the District of Columbia government, the Employee was never informed of any deficiencies in his work performance in a timely manner, throughout the rating period so that, to the extent possible, he is given an opportunity to overcome such deficiencies and improve his performance (DPM 1402.3a). Each supervisor shall complete a Performance Plan outlining what is expected for each covered employee (DPM 1406.1). The Employee was not given a Performance Plan

as dictated in the DPM. Therefore, the reason of poor performance is not valid if the DYRS has failed to identify and discuss with the employee performance competencies, and how each competency would relate to the employee's job. (DPM 1406.1 through 1409.3).

This plaintiff is a pro se litigant attempint to pursue remedy for a wrong that has befallen him. While this complaint does indeed overcome a rule 12(b) (6) challenge. It does so in a very unique matter. Considering the plaintiff was not an MSS employee and DYRS nor the defendant had no right to terminate him since he was a career employee.

The plaintiff will be able to refute defendant's claim that he played no role in his termination. Thus defendant's relief should be denied because such relief is not permitted under the rules of this court.

**Dated: March 15, 2007**

Respectfully submitted:

By: Henry C. Davis

**CERTIFICATE PURSUANT TO RULE 5 ( c ) AND 5( i )**

I hereby certify that I sent a copy of this motion to chambers.

Henry C. Davis

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Opposition of Defendant's Motion was mailed first, class postage pre-paid, this 15th day of March 2007 to:

Pili Robinson
The Missouri Youth Service Institute
1906 Hayselton Drive
Jefferson City, Mo 65109

Andre T. Wise
Miller & Chevalier CHTD
655 Fifteenth St. N.W.
Suite 900
Washington, D.C. 20005-5701

Henry C. Davis